THE EASTERN.

(District Court, D. Massachusetts. June 9, 1919.)

No. 1534.

1. MARITIME LIENS ⊂⊃30—SUPPLIES—VESSEL UNDER CHARTER.
     A fuel company, which had previously furnished coal to a tug while being operated by her owner, on orders from her engineer, *held* entitled to a lien under Act June 23, 1910, § 1 (Comp. St. § 7783), for coal furnished on orders of the same engineer, although she was then under a charter which required the charterer to furnish the coal, but of which fact it was not informed until afterward.

2. MARITIME LIENS ⊂⊃40—SUPPLIES—WAIVER OF LIEN.
     A libelant, who furnished coal to a tug on orders of her engineer, and was then told by him to charge the coal to her charterer, which he did, and attempted to collect from it until it became insolvent, *held* to have waived his lien on the tug.

In Admiralty. Suit by the City Fuel Company against the steam tug Eastern. Libel dismissed.

Eaton & McKnight and Charles T. Cottrell, all of Boston, Mass., for libelant.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for claimant.

MORTON, District Judge. The tug Eastern is owned by the Eastern Transportation Company, the claimant. In November, 1916, she was chartered to the New York & Boston Transportation Company. By the charter the charterers were to pay for her coal. On December 20th, while under this charter, the Eastern was supplied with coal by the City Fuel Company, as stated in the libel. She had been coaled by it many times before while being operated by her owner. On this occasion she had the same engineer as on the former ones; he ordered the coal, and after it had been put on board he told the representative of the Fuel Company that the Eastern was under charter to the New

York & Boston Transportation Company, and that the charterer was to pay for the coal. A notation to that effect was made on the delivery slip of the fuel company.

[1] The information that the steamer (or tug) was under charter was not communicated to the fuel company until the coal had been furnished, and I do not think that the libelant was lacking in reasonable diligence, within the meaning of the statute, in not ascertaining the existence of the charter before the coal had been put on board. See U. S. Compiled Statutes, § 7785. "The management of the vessel" in respect to her coal supply was intrusted to Snyder, her chief engineer, by whom the coal was ordered. See U. S. Compiled Statutes, § 7784. The furnisher, therefore, acquired a lien for the price of the coal under Act June 23, 1910, c. 373, § 1, 36 Stat. 604 (U. S. Compiled Stats. § 7783).

[2] The real question is whether the lien was waived and lost. The coal was promptly billed by the libelant to the New York & Boston Transportation Company, and later the New York & Boston Transportation Company was pressed by the libelant for payment of the account. Not until the charterer had suspended payment was any effort made to collect from the tug.

If the information that the charterer was to pay for the coal had been given to the fuel company before the coal was put on board, no lien would have arisen. Section 7785, supra. Immediately after the coal had been furnished, and before the steamer left the libelant's wharf, it was notified that the vessel was not in fact liable for the coal. Under such circumstances, if the libelant intended to hold the vessel, prompt intimation of such intention ought to have been given to her owner and the libelant should have made it plain that it was insisting on the condition which it understood to exist at the time when the coal was put on board, instead of the real condition of things. It is difficult to see how the libelant could hold both the charterer and the tug, and slight evidence is sufficient to show a waiver of the apparent liability of the vessel and an acceptance of the charterer in her stead. The libelant's act in billing the coal to the charterer, after it knew that the charterer had no right to pledge the credit of the tug, seems to me an acceptance of the actual situation, and to leave the libelant in the same position as if the information as to the charter had been given to it before the coal had been put on board, instead of just afterwards. The Samuel Marshall, 54 Fed. 396, 404, 4 C. C. A. 385; The J. Doherty (D. C.) 207 Fed. 997, 1001.

I therefore find and rule that the lien was waived and abandoned. A decree may be entered dismissing the libel.